**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
ANITA G. ALLEN,                      )
                                     )
                  Plaintiff,         )
                                     )
        v.                           )       1:17CV277
                                     )
NANCY A. BERRYHILL,                  )
Acting Commissioner of Social        )
Security,                            )
                                     )
                  Defendant.         )
```

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Anita G. Allen, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 9, 12; see also Docket Entry 10 (Plaintiff's Memorandum); Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging an onset date of April 1, 2010. (Tr. 169-78.)[1]  Upon denial of that application initially (Tr. 62-74, 93-101) and on reconsideration (Tr. 75-90, 103-10), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 111-12).  Plaintiff, her non-attorney representative, and a vocational expert ("VE") attended the hearing. (Tr. 29-61.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 10-22.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 7-8, 280-82), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1.  [Plaintiff] last met the insured status requirements of the . . . Act on September 30, 2013.
>
> 2.  [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of May 1, 2011 through her date last insured of September 30, 2013.
>
> 3.  Through the date last insured, [Plaintiff] had the following severe impairments: cervical degenerative disc disease status post-ACDF; left shoulder strain status post-surgery; lumbar degenerative disc disease; right knee strain status post-tibial plateau fracture, chronic obstructive pulmonary disease (COPD); and obesity.

---

[1] Due to Plaintiff's reported earnings from employment in 2011, the Social Security Administration amended Plaintiff's onset date to May 1, 2011, the date she stopped working. (See Tr. 203, 204, 217-18, 225-27.)  Plaintiff did not challenge that determination. (See Tr. 224.)

. . .

4.   Through the date last insured, Plaintiff] did not
have an impairment or combination of impairments that met
or medically equaled the severity of one of the listed
impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.   . . . [T]hrough the date last insured, [Plaintiff]
had the residual functional capacity to perform sedentary
work . . . except [she] can never climb ladders, ropes or
scaffolds, can frequently climb ramps and stairs, can
occasionally balance, can frequently kneel, stoop, and
crouch, and can occasionally crawl. [Plaintiff] can never
push or pull with the left upper extremity and can never
reach overhead with the left upper extremity, which is
the non-dominant hand. [Plaintiff] would need to avoid
concentrated exposure to fumes, odors, dusts, gases, poor
ventilation, extreme heat and hazards.

. . .

6.   Through the date last insured, [Plaintiff] was
unable to perform any past relevant work.

. . .

10.  Through the date last insured, considering
[Plaintiff's] age, education, work experience, and
residual functional capacity, there were jobs that
existed in significant numbers in the national economy
that [Plaintiff] could have performed.

. . .

11.  [Plaintiff] was not under a disability, as defined
in the . . . Act, at any time from May 1, 2011, through
September 30, 2013, the date last insured.

(Tr. 15-22 (bold font and internal parenthetical citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there

is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u>

(quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration ["SSA"] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ . . . accepted testimony from a [VE] that appears to conflict with the [Dictionary of Occupational Titles ("DOT")] yet [the ALJ] failed to obtain an explanation from the [VE]" (Docket Entry 10 at 2 (single-spacing and bold font omitted)); and

2) "the ALJ found [Plaintiff's] testimony not entirely credible but the ALJ d[id] not give legally sufficient reasons supported by substantial evidence for finding [Plaintiff's] testimony not entirely credible" (id. at 7 (single-spacing and bold font omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 3-17.)

_____

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## 1. Conflict Between VE's Testimony and the <u>DOT</u>

In Plaintiff's first issue on review, she contends that "[t]he ALJ . . . accepted testimony from a [VE] that appears to conflict with the [<u>DOT</u>] yet [the ALJ] failed to obtain an explanation from the [VE]." (Docket Entry 10 at 2 (single-spacing and bold font omitted).) More specifically, Plaintiff asserts that the ALJ failed to resolve an apparent conflict between the VE's testimony and the <u>DOT</u> in violation of Social Security Ruling 00-4p, <u>Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u>, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p"), and <u>Pearson v. Colvin</u>, 810 F.3d 204 (4th Cir. 2015). (<u>Id.</u> at 2-7.) According to Plaintiff, the VE's testimony that an individual with Plaintiff's RFC, which includes a prohibition on overhead reaching with the left, non-dominant upper extremity, can perform the jobs of Document Preparer, Microfilming (<u>DOT</u> No. 249.587-018, 1991 WL 672349 (4th ed. rev. 1991)), Telephone Solicitor (<u>DOT</u> No. 299.357-014, 1991 WL 672624), and Touch-Up Screener, Printed Circuit Board Assembly (<u>DOT</u> No. 726.684-110, 1991 WL 679616)) (<u>see</u> Tr. 50-51), conflicts with the <u>DOT</u>'s job listings for all three jobs, which require either frequent or occasional reaching (<u>see</u> Docket Entry 10 at 6-7). Plaintiff maintains that "[t]he [VE] noted the [<u>DOT</u>] d[id] not differentiate reaching in different directions but the ALJ failed to obtain a further

explanation about these jobs and the requirements for overhead reaching." (Id. at 7.) Plaintiff's contentions miss the mark.

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]. When there is an apparent unresolved conflict between VE . . . evidence and the [DOT], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). "[A]n ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]," Pearson, 810 F.3d at 208 (internal quotation marks omitted); thus, "[t]he ALJ independently must identify . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the [DOT]," id. at 209 (emphasis added); see also id. (rejecting the Commissioner's argument that an "apparent" conflict meant only an "obvious" one).

Here, after the VE testified that an individual with an RFC which included, inter alia, occasional overhead reaching with the left, non-dominant upper extremity, could not perform any of Plaintiff's past relevant work (see Tr. 48-49), the ALJ queried the

VE whether such an individual could perform any other jobs existing in significant numbers in the national economy (see Tr. 49.) In response, the VE opined that such an individual would remain capable of performing the jobs of (1) Document Preparer, Microfilming, (2) Telemarketer/Telephone Solicitor, and (3) Touch-Up Screener, Printed Circuit Board Assembly, and provided the corresponding DOT codes for those three jobs, as well as their incidence in the national economy. (See Tr. 50-51.) The ALJ thereafter asked the VE whether those three jobs would remain available if the ALJ altered the hypothetical to reflect no overhead reaching with the left, non-dominant upper extremity, and the VE responded that the jobs would remain appropriate. (See Tr. 51.) The ALJ then inquired about the impact that amending the hypothetical to occasional reaching in all directions would have on the available jobs, and the VE eliminated the Document Preparer and Touch-Up Screener jobs, but testified as follows regarding the Telephone Solicitor job:

> The telephone solicitor . . . per the [DOT] lists occasional for both reaching and handling. It does not distinguish between . . . whether it's one [extremity], or the other, or bilateral. It's just a general statement. But based on professional experience with that occasional, it does . . . [c]ertainly fall within the [DOT] description.

(Tr. 52 (emphasis added).)

After cross-examination of the VE by Plaintiff's representative, the following exchange occurred between the ALJ and the VE:

ALJ: [I]s your testimony consistent with the [DOT]?

VE: Yes, Your Honor, and there is no conflict in any of my testimony with the [DOT]. I would just specifically state that for those matters that the [DOT], or the [Selected Characteristics of Occupations], its accompanying volume, do not address – those issues would be based on my professional experience . . . . The [DOT] does not make a differentiation between bilateral or unilateral use of limbs or any type of postural movements. It would be general statements.

. . .

Also differentiating the types of reaching whether in any specific direction, it does not deal with that.

So in those cases that I just mentioned, those issues with the testimony would be based upon my professional experience, but, again, no conflict with the [DOT].

(Tr. 59 (emphasis added).)

The ALJ subsequently adopted the VE's testimony as to Plaintiff's ability to perform the three jobs in question:

To determine the extent to which [the RFC's limitations] erode the unskilled sedentary occupational base, through the date last insured, [the ALJ] asked the [VE] whether jobs existed in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the individual would have been able to perform the requirements of representative sedentary, unskilled ([Specific Vocational Preparation ("SVP")] 2) or semi-skilled (SVP 3) occupations such as document preparer, [DOT] # 249.587-018, with 14,000 jobs available nationwide; telemarketer, [DOT] # 299.357-014, with 258,000 jobs available nationwide; and touch-up screener/printed circuit board assembler, [DOT] # 726.684-110, with 1,300 jobs available nationwide.

> <u>Pursuant to SSR 00-4p, [the ALJ] ha[s] determined that</u>
> <u>the [VE's] testimony is consistent with the information</u>
> <u>contained in the</u> [<u>DOT</u>].
>
> Based on the testimony of the [VE], [the ALJ] conclude[s]
> that, through the date last insured, considering
> [Plaintiff's] age, education, work experience, and [RFC],
> [Plaintiff] was capable of making a successful adjustment
> to other work that existed in significant numbers in the
> national economy.

(Tr. 22 (emphasis added).)

As Plaintiff argues (<u>see</u> Docket Entry 10 at 7), both the Document Preparer, Microfilming, and Touch-Up Screener/Printed Circuit Board Assembly jobs require <u>frequent</u> reaching, <u>see</u> <u>DOT</u> No. 249.587-018 (Document Preparer, Microfilming), 1991 WL 672349; <u>DOT</u> No. 726.684-110 (Touch-Up Screener, Printed Circuit Board Assembly), 1991 WL 679616, and the Telephone Solicitor job requires <u>occasional</u> reaching, <u>DOT</u> No. 299.357-014 (Telephone Solicitor), 1991 WL 672624, which, under <u>Pearson</u>, would apparently conflict with the VE's testimony that an individual <u>unable</u> to reach overhead could still perform those jobs (<u>see</u> Tr. 51). In that case, "[t]he ALJ found [the claimant's] nondominant arm could only occasionally reach upward," but for all three jobs cited by the VE, "the [DOT] list[ed] *frequent* reaching as a requirement." <u>Pearson</u>, 810 F.3d at 210 (emphasis in original). The court observed: "Although the [<u>DOT</u>] does not expressly state that the occupations identified by the [VE] require frequent bilateral overhead reaching, the [<u>DOT</u>'s] broad definition of "reaching" means that they certainly *may*

require such reaching." Id. at 211 (emphasis in original). The court found the ALJ had failed to resolve the apparent conflict and remanded the case. Id. at 211-12.

In contrast to Pearson, the ALJ here resolved the apparent conflict between the DOT's listings for the three jobs in question reflecting *frequent* and *occasional* reaching, see DOT No. 249.587-018 (Document Preparer, Microfilming), 1991 WL 672349; DOT No. 726.684-110 (Touch-Up Screener, Printed Circuit Board Assembly), 1991 WL 679616; DOT No. 299.357-014 (Telephone Solicitor), 1991 WL 672624, and the VE's testimony that an individual _unable_ to reach overhead could perform those jobs (see Tr. 51). As described above, the VE's testimony reflects that he expressly acknowledged that the DOT neither differentiated between unilateral and bilateral reaching, nor specifically addressed the direction of reaching involved (see Tr. 52, 59) and, thus, relied on his _own professional experience_ to opine that an individual who could not reach overhead with the left, non-dominant arm could still perform all three of the jobs in question (see Tr. 51). Under such circumstances, the ALJ complied with SSR 00-4p and Pearson by eliciting a reasonable explanation from the VE for the apparent conflict in question. Neither SSR 00-4p nor Pearson require anything more of the ALJ here.

In sum, Plaintiff's first assignment of error fails as a matter of law.

## 2. Evaluation of Subjective Complaints

Lastly, Plaintiff asserts that "the ALJ found [Plaintiff's] testimony not entirely credible but the ALJ d[id] not give legally sufficient reasons supported by substantial evidence for finding [Plaintiff's] testimony not entirely credible." (Docket Entry 10 at 7 (single-spacing and bold font omitted).) In particular, Plaintiff criticizes the ALJ's use of "meaningless boilerplate" in finding that Plaintiff's "'medically determinable impairments could reasonably be expected to cause the alleged symptoms,'" but that Plaintiff's "'statements concerning the intensity, persistence and limiting effects of th[o]se symptoms [we]re not entirely credible for the reasons explained in th[e] decision.'" (Id. at 8 (quoting Tr. 18, and citing Parker v. Astrue, 597 F.3d 920, 921 (7th Cir. 2010)).) According to Plaintiff, the ALJ "simply recit[ed] the medical evidence in support of her [RFC] determination," and failed "to specify which testimony she f[ound] not credible, [or] provide legally sufficient reasons, supported by evidence in the record, to support that credibility determination." (Id. at 8-9.) Plaintiff has established an error that entitles her to remand.[6]

---

[6] Applicable to ALJ decisions on or after March 28, 2016, the SSA superceded Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p"), with Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." SSR 16-3p, 2017 WL 5180304, at *1. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the
(continued...)

SSR 96-7p, as applied by the Fourth Circuit in <u>Craig</u>, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged.'" <u>Id.</u> at 594 (quoting 20 C.F.R. § 404.1529(b)). Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities . . . shown by medically acceptable clinical diagnostic techniques") and laboratory findings ("anatomical, physiological, or psychological phenomena . . . shown by the use of medically acceptable laboratory diagnostic techniques"). 20 C.F.R. § 404.1528.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which they affect his or her ability to work. <u>Craig</u>, 76 F.3d at 595. In making that determination, the ALJ:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily

---

[6] (...continued)
publishing of] SSR 96-7p," <u>id.</u> at *1 n.1. As the ALJ's decision in this case pre-dates the effective date of SSR 16-3p (<u>see</u> Tr. 22), this Recommendation will apply SSR 96-7p to the ALJ's analysis of Plaintiff's subjective complaints.

activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted). "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *6 (emphasis added). In other words, "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms . . . must be considered in the context of all the evidence." (Id.)

In this case, the ALJ found for Plaintiff on part one of the inquiry, but ruled, in connection with part two, that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible for the reasons explained in th[e] decision." (Tr. 18.)

As an initial matter, Plaintiff's challenge to the above-quoted language as "meaningless boilerplate" (Docket Entry 10 at 8) falls short. As Plaintiff concedes (see id.) and as the record reflects (see Tr. 18), the ALJ here did not use the boilerplate that the United States Court of Appeals for the Fourth Circuit deemed problematic, see Mascio v. Colvin, 780 F.3d 632, 639 (4th Cir. 2015) (ruling ALJ's finding that the claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not credible to the extent they [we]re inconsistent with the . . . [RFC] assessment . . . gets things backwards by

17

implying that ability to work is determined first and is then used to determine the claimants credibility" (emphasis added) (internal quotation marks and citation omitted)); see also Linares v. Colvin, No. 14-120, 2015 WL 4389533, at 86 (W.D.N.C. July 17, 2015) (unpublished) (finding language similar to phrasing used by ALJ here "distinguishable from the now suspect boilerplate language used in Mascio" because "the ALJ's language does not suggest that he first assessed [the p]laintiff's RFC and used that assessment to determine credibility").

However, as Plaintiff argues (see Docket Entry 10 at 7-11), the ALJ failed to provide legally sufficient reasons to support her analysis of Plaintiff's subjective complaints. The ALJ's analysis ran afoul of 20 C.F.R. § 404.1529(c)(2) and SSR 96-7p, 1996 WL 374186, at *6, because the ALJ's expressed reasoning indicates that she relied solely on objective medical evidence to discount Plaintiff's subjective complaints regarding her shoulder, lumbar, knee, and respiratory impairments:

- With regard to [Plaintiff's] left shoulder strain status post-surgery, the record notes that [Plaintiff] sustained a left shoulder injury due to a fall in April 2011 and although x-rays were normal, she experienced persistent soreness despite physical therapy and a steroid injection. Orthopedic notes from August 2011 state that [Plaintiff] exhibited tenderness at the anterior and posterior aspects of the left shoulder, but fairly full range of motion although pain with full internal and external rotation. . . . [Plaintiff] underwent an acromioplasty of the left shoulder later that month. Post-operative notes from October to December 2011 do not indicate much

progress, but also state [Plaintiff] had not participated in physical therapy.

. . .

Orthopedic records from June 2012 note [Plaintiff's] continued complaints of left shoulder weakness and instability and that the anterior and posterior left shoulder were tender to palpation and that range of motion was limited with abduction and external rotation. The plan included an x-ray of the left shoulder, which revealed no acute fracture or join malalignment, an appropriately located left humeral head, and mild acromioclavicular osteoarthritis. <u>Such stability of [Plaintiff's] left shoulder upon objective medical testing after surgery suggests the severity of [Plaintiff's] left shoulder condition is not as severe as alleged</u> (Tr. 19 (emphasis added);

- Regarding [Plaintiff's] lumbar degenerative disc disease, an x-ray of the lumbar spine from July 2013 revealed narrowing of the space at L1-2, but no pathologic motion in flection or extension. An MRI of the lumbar spine from the next month revealed far left disc herniation at L3-4 with associated osteo[]phyte formation, which narrow[ed] the left neural foramen and contact[ed] the exiting left L3 nerve root. The report also revealed far right lateral disc herniation at L4-5, which narrow[ed] the right neural foramen and may contact the exiting right L4 nerve root. <u>Such mild to moderate findings upon objective medical testing suggests that the severity of [Plaintiff's] lumbar spine condition is not as severe as alleged</u> (<u>id.</u> (emphasis added); and

- With regard to [Plaintiff's] right knee strain status post-tibial plateau fracture, an x-ray of the right knee from September 2012 revealed a rather subtle fracture of the lateral tibial plateau with moderate joint effusion. Primary care provider notes from December 2012 state [Plaintiff's] report of overall improvement in her right knee, but pain below the knee. Regarding [Plaintiff's] COPD, primary care notes indicate [Plaintiff's] complaints of dyspnea and diagnosis of this condition. However, a pulmonary function

> analysis revealed no evidence obstructive defect
> and a FEV1 value that was 76% of predicted. <u>Such
> mild findings upon objective medical testing of the
> right knee and respiratory system suggests that the
> severity of [Plaintiff's] right knee condition and
> COPD are not as severe as alleged</u> (Tr. 19-20
> (emphasis added)).

Moreover, as a further consequence of the ALJ's failure to expressly rely on evidence beyond "objective medical testing" to discount Plaintiff's shoulder, lumbar, knee, and respiratory symptoms, the ALJ also neglected to discuss Plaintiff's ability to engage in activities of daily living as part of her analysis of Plaintiff's subjective complaints (Tr. 18-20). See 20 C.F.R. § 404.1529(c)(3)(i); SSR 96-7p, 1996 WL 374186, at *3.

Under such circumstances, the ALJ misapplied the law in discounting Plaintiff's symptom reporting, necessitating a remand.

### III. CONCLUSION

Plaintiff has demonstrated an error that warrants remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings, to include reevaluation of Plaintiff's symptom reporting in conformity with 20 C.F.R. § 404.1529, SSR 16-3p, and applicable authority. As a result, Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security, or Remanding the Cause for a Rehearing (Docket Entry 9) should be granted in part (i.e., to the extent it requests

remand) and Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) should be denied.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 1, 2018